**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

IN RE:

CONCRETE AND CEMENT ADDITIVES
ANTITRUST LITIGATION

*This Document Relates to:*
*All Direct Purchaser Plaintiff Actions*

1:24-cv-3056-LJL
1:24-cv-3033-LJL
1:24-cv-3045-LJL
1:24-cv-3246-LJL
1:24-cv-3255-LJL
1:24-cv-3236-LJL
1:24-cv-3817-LJL
1:24-cv-3806-LJL

Case No. 24-MD-3097 (LJL)

**MEMORANDUM OF LAW IN SUPPORT OF**
**THE HAUSFELD GROUP'S MOTION TO APPOINT INTERIM CLASS COUNSEL**
**FOR THE DIRECT PURCHASER PLAINTIFFS**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ............................................................................................... 1

II.   LEGAL STANDARD........................................................................................... 2

III.  THE COURT SHOULD APPOINT HAUSFELD AS INTERIM LEAD CLASS COUNSEL
      AND GUSTAFSON GLUEK, BERGER MONTAGUE, AND THE ROBERTS LAW FIRM
      AS THE EXECUTIVE COMMITTEE. ................................................................ 3

  A.  The Complexity of this MDL Supports the Hausfeld Group's Proposed Leadership
      Structure. ........................................................................................................ 3

    *1. This MDL involves a dozen defendants in multiple countries, nearly 150 product lines,
        multiple third parties, and conduct that spans six years or more.* ............................... 3

    *2. The Hausfeld Group's leadership proposal is both efficient and appropriate given the
        complexity of this litigation.* ........................................................................... 5

  B.  Hausfeld Is Capable and Qualified to Serve As Interim Lead Class Counsel. ................. 10

    *1. Hausfeld has done significant work investigating the claims in this Action, coordinating
        plaintiffs' efforts, and advancing this litigation.* .......................................... 10

    *2. Hausfeld, one of the world's leading plaintiffs' antitrust firms, has the experience and
        expertise to lead this litigation effectively and efficiently.* ........................................ 11

  C.  Berger Montague, Gustafson Gluek, and Roberts Law Firm Are Capable and Qualified to
      Serve as the Executive Committee. .................................................................... 15

    *1. Berger Montague PC* ................................................................................. 15

    *2. Gustafson Gluek PLLC* .............................................................................. 17

    *3. Roberts Law Firm US, PC* .......................................................................... 19

  D.  The Hausfeld Group Will Commit the Resources Necessary to Lead the DPP Class...... 21

  E.  The Hausfeld Group's Proposed Leadership Structure is the Product of Private Ordering
      and Reflects the Consensus of All DPPs and Their Counsel............................................ 22

IV.   CONCLUSION................................................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
 240 F.R.D. 56 (E.D.N.Y. 2006) ...................................................................................6, 22

*Brigiotta's Farmland Produce & Garden Ctr., Inc. v. United Potato Growers of
 Idaho, Inc*.,
 No. 10-cv-307, 2010 WL 3928544 (D. Idaho Oct. 4, 2010)..........................................6

*In re Deva Concepts Prods. Liab. Litig.*,
 No. 20-cv-1234, 2020 WL 4368362 (S.D.N.Y. July 30, 2020)......................................8

*In re Domestic Airline Travel Antitrust Litig.*,
 No. 15-mc-1404, 2015 WL 14081430 (D.D.C. Dec. 7, 2015) .......................................7

*In re Domestic Airline Travel Antitrust Litig.*,
 No. 15-mc-1404, 2016 WL 11953343 (D.D.C. Feb. 4, 2016).........................................6

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
 No. 98-cv-4318, 2001 WL 709262 (S.D.N.Y. June 22, 2001) .......................................6

*In Re Equifax, Inc., Customer Data Security Breach Litig.*,
 No. 17-md-2800 (N.D. Ga.).........................................................................................21

*In re Gen. Motors LLC Ignition Switch Litig.*,
 477 F. Supp. 3d 170 (S.D.N.Y. 2020)............................................................................6

*In re Google Digital Adver. Antitrust Litig.*,
 No. 21-md-3010, 2022 WL 622031 (S.D.N.Y. Mar. 3, 2022) ..............................6, 16

*In re Initial Pub. Offering Sec. Litig.*,
 No 21-mc-92, 2011 WL 2732563 (S.D.N.Y. July 8, 2011)......................................6

*In re Lidoderm Antitrust Litig.*,
 No. 14-md-2521, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017)...................................6

*In re Mun. Derivatives Antitrust Litig.*,
 252 F.R.D. 184 (S.D.N.Y. 2008) ..............................................................................3, 6

*In re Nat'l Football Leagues Sunday Ticket Antitrust Litig.*,
 No. 15-ml-2668, 2016 WL 6693146 (C.D. Cal. May 23, 2016) ..........................6, 15

*In re Parking Heaters Antitrust Litig.*,
 310 F.R.D 54 (E.D.N.Y. 2015)....................................................................................8

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   No. 05-md-1720, 2006 WL 2038650 (E.D.N.Y. Feb. 24, 2006)........................................7, 15

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   No. 07-mc-489, 2008 WL 1883447 (D.D.C. Apr. 28, 2008)....................................................7

**Rules**

Fed. R. Civ. P. 23(g) ...............................................................................................................1, 2, 3

**Other Authorities**

Bolch Judicial Inst., *Guidelines and Best Practices for Large and Mass-Tort
   MDLs* (2018) (2d ed.) ........................................................................................................9, 10

Manual for Complex Litigation (Fourth) 2004 ...................................................................2, 7, 22

## I.      INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23(g), Direct Purchaser Plaintiffs ("DPPs") M&D Peterson, LLC; Keystone Concrete Block & Supply Co. Inc.; 570 Concrete, LLC; H&S Ready Mix, Inc.; and J&L Imperium Industries, LLC (the "Hausfeld Group") respectfully move for the appointment of Hausfeld LLP as Interim Lead Class Counsel and for the appointment of Berger Montague, PC, Gustafson Gluek PLLC, and Roberts Law Firm U.S., PC as members of an Executive Committee for the putative class of direct purchasers of concrete and cement additives ("CCAs").[1] The Hausfeld Group proposes that Hausfeld, as Interim Lead Class Counsel, be charged with all management, coordination, and decision making for the putative DPP class, while Berger Montague, Gustafson Gluek, and Roberts Law, as members of the Executive Committee, be charged with carrying out core non-duplicative litigation functions at Hausfeld's direction.

The primary goal in appointing leadership in a complex action is to achieve efficiency and economy while also ensuring fairness to the parties. The Hausfeld Group's proposal achieves these goals.

First, this multi-district litigation is complex, involving a dozen domestic and foreign defendants that are the subject of both global and domestic government investigations, alleged anticompetitive conduct that spans at least six years, and multiple foreign third parties that will be the subject of discovery, among other complexities. The proposed leadership structure marshals the necessary collective resources and complex antitrust class action expertise to

---

[1] The DPPs have filed eight separate class action complaints, all alleging the same core facts and seeking to represent the same class. The Judicial Panel on Multidistrict Litigation ("JPML") consolidated and transferred these cases to this District for pretrial purposes.

prosecute this complex action while reducing duplication and improving efficiencies by vesting decision making authority and case management in Hausfeld.

Second, Hausfeld is qualified for appointment as Interim Lead Class Counsel under the considerations set forth by Federal Rule of Civil Procedure 23(g). Hausfeld conducted the initial investigation of the alleged conduct and filed the first two complaints among all plaintiffs (both DPPs and indirect purchaser plaintiffs ("IPPs")) and has led this litigation from the outset, including coordinating all counsel prior to transfer by the JPML, serving as the principal negotiator with Defendants on behalf of DPPs on all stipulations and submissions to date, representing DPPs before the JPML, and acting as the primary interface for coordination with the IPPs. Hausfeld and its team also have substantial expertise and a record of success in complex antitrust class action management that make it the best choice to direct the litigation. Similarly, the proposed Executive Committee is made up of highly experienced class action antitrust firms with an impressive litigation record of their own and sufficient collective resources to assist in the prosecution of this action effectively and efficiently at Hausfeld's direction.

Finally, the Hausfeld Group's proposal is the product of private ordering, by consent, among the 21 law firms and their 47 counsel of record representing the eight DPPs. That is, the Hausfeld Group's proposal reflects the consensus and support of all DPPs and their confidence in this structure to represent the DPPs' interests.

## II.    LEGAL STANDARD

Courts may designate interim class counsel prior to determining whether to certify the class. *See* Fed. R. Civ. P. 23(g)(3). Selection of interim class counsel early in litigation facilitates "efficiency and economy without jeopardizing fairness to the parties." *See Manual for Complex Litig. (Fourth)* ("*Manual*") § 10.221 (2004). In complex matters such as this, appointing seasoned interim class counsel is a key organizational tool for courts. *See generally, id.* §§

2

10.224, 21.272. The "designation of interim [class] counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *Id.* § 21.11. Because interim class counsel is responsible for acting on behalf of the class throughout the entire litigation, the Court must appoint counsel who are qualified to represent the class fairly and adequately through trial, if necessary. *See* Fed. R. Civ. P. 23(g)(4).

Rule 23(g) identifies four considerations governing appointment of class counsel: (i) the work counsel has done to identify or investigate the claims; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to the representation. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). These factors also apply interim class counsel appointments. *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008).

## III. THE COURT SHOULD APPOINT HAUSFELD AS INTERIM LEAD CLASS COUNSEL AND GUSTAFSON GLUEK, BERGER MONTAGUE, AND THE ROBERTS LAW FIRM AS THE EXECUTIVE COMMITTEE.

As set forth below, the Hausfeld Group's proposed leadership structure readily meets the requirements of Rule 23(g) and achieves the goals of appointing interim class counsel.

### A. The Complexity of this MDL Supports the Hausfeld Group's Proposed Leadership Structure.

#### 1. *This MDL involves a dozen defendants in multiple countries, nearly 150 product lines, multiple third parties, and conduct that spans six years or more*.

Given the number, size, structure, and location of the Defendants, the nature of the CCA market, and ongoing government investigations, both motion practice and party (and third party) discovery in this MDL will be complex. DPPs allege a conspiracy among some of the largest specialty chemical manufacturing groups in the world to raise, maintain, or stabilize prices for CCAs in violation of Section 1 of the Sherman Act. Together, these groups comprise 12

corporate entities named in the pending DPP complaints, each of which may file dispositive motions. And additional defendants may be added in the consolidated class action complaints. Three of those Defendant groups have foreign parents or headquarters in the United Kingdom, Switzerland, Germany, or France, with subsidiaries and affiliates worldwide, including in the United States. The conduct alleged is under investigation globally by the European Commission, the United Kingdom's Competition and Markets Authority ("CMA"), and the Turkish Competition Authority, all of which conducted unannounced raids on defendants' foreign headquarters. *See, e.g.,* Compl. ¶¶ 70, 74-77, *Keystone Concrete Block & Supply Co.* v. *Sika AG*, No. 24-cv-3033 (ECF No. 1) (S.D.N.Y.) ("Keystone Compl."). Domestically, the U.S. Department of Justice ("DOJ") has also empaneled a grand jury, issued grand jury subpoenas to some or all of the Defendants, and informed this Court of its interest in this litigation and its potential intervention. ECF No. 67. Party discovery and motion practice is thus likely to be complex, voluminous, and resource intensive.

Further, the market for CCAs is large, with named Defendants manufacturing at least 12 different types of additives and admixtures, with different properties, encompassing nearly 150 product lines for concrete, cement, and mortar CCAs, as well as products containing or bundled with CCAs. *See, e.g.,* Keystone Compl. ¶¶ 56, 66-69. The alleged conduct began as early as 2018, resulting in a relevant conduct period spanning six years or more. Effective prosecution of this MDL thus requires not only deep knowledge of antitrust law and complex litigation practices, but also development of knowledge about these products, the market, and the Defendants' operations across the relevant period.

And third-party discovery, both domestically and internationally, is likely to be significant given the wide range of both country-specific and multinational CCA trade

associations alleged to have facilitated the conspiracy. *See, e.g.,* Keystone Compl., ¶¶ 6, 82-99. Additionally, the DOJ has issued a grand jury subpoena to at least one domestic CCA manufacturer, with its headquarters in Mexico, that has *not* been named in the pending complaints.[2] That manufacturer was also the subject of the European Commission's dawn raids of its operations in Europe.[3] The CMA has also sought to search an individual's residence in connection with its investigation.[4] This international non-party discovery may require resort to the Hague Convention and other foreign discovery protocols.

Finally, this case already involves two classes (direct and indirect purchasers) that will proceed in largely parallel fashion. And given the size of the CCA market ($27 billion in 2022), it is possible that "opt-out" complaints may be filed. Thus, the case will require extensive coordination and communication across any opt-out plaintiffs and the indirect purchaser class to ensure non-duplicative, efficient discovery and orderly case management.

> 2. *The Hausfeld Group's leadership proposal is both efficient and appropriate given the complexity of this litigation.*

Defendants have retained some of the nation's most well-known antitrust practitioners, backed by the largest, most well-resourced defense firms globally, and it can reasonably be expected that they will mount a vigorous defense in this case at every stage.[5] A case as complex

---

[2] *See* Form 6-K, Cemex, S.A.B. de C.V., Ex. 1 at 51, Feb. 23, 2024, https://www.sec.gov/Archives/edgar/data/1076378/000119312524044655/d747690dex1.htm.

[3] *Cemex faces EU, US antitrust probes into construction chemicals*, MLex Market Insight, Feb. 23, 2024, https://mlexmarketinsight.com/news/insight/cemex-faces-eu-us-antitrust-probes-into-construction-chemicals.

[4] CMA Press Release, *CMA wins legal challenge against CAT on home search warrants*, Apr. 22, 2024, https://www.gov.uk/government/news/cma-wins-legal-challenge-against-cat-on-home-search-warrants.

[5] Kirkland & Ellis and Latham & Watkins each employ 3,500 attorneys worldwide. *See* About Us, Latham & Watkins, https://www.lw.com/en/about-us; About Kirkland, Kirkland & Ellis, https://www.kirkland.com/content/about-kirkland. Simpson Thacher & Bartlett employs more

as this demands a leadership structure that can provide comparable talent and resources to effectively represent the class while prioritizing efficient case management. *See In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 58 (E.D.N.Y. 2006) (finding appointing four firms as interim class counsel appropriate given "the complexity of the case and sheer numbers of litigants"; *Mun. Derivatives*, 252 F.R.D. at 187 (finding appointment of multiple firms permits plaintiffs to marshal collective resources comparable to defendants).[6] The Hausfeld Group's proposed leadership structure accomplishes those goals.

Specifically, the Hausfeld Group's proposed structure concentrates leadership in a small but experienced group of antitrust law firms that will bring the collective resources and expertise

---

than 1,300 attorneys in 11 offices worldwide. Simpson Thacher, Our Firm, https://www.stblaw.com. And Baker McKenzie, with an estimated 4,700 attorneys worldwide, announced revenues of \$3.3 billion for 2023 alone. Baker McKenzie Announces Global Revenues of USD \$3.3 Billion, https://www.bakermckenzie.com/en/newsroom/2023/11/baker-mckenzie-announces-global-revenues.

[6] Courts routinely appoint comparable or larger multi-firm leadership structures in similarly complex antitrust MDLs. *See, e.g., In re Google Digital Adver. Antitrust Litig.*, No. 21-md-3010, 2022 WL 622031, at *2-3 (S.D.N.Y. Mar. 3, 2022) (two co-lead counsel and a two-firm executive committee); *In re Lidoderm Antitrust Litig.*, No. 14-md-2521, 2017 WL 679367, at *27 (N.D. Cal. Feb. 21, 2017) (three co-lead counsel, liaison counsel, and a five-firm executive committee); *In re Nat'l Football Leagues Sunday Ticket Antitrust Litig.*, No. 15-ml-2668, 2016 WL 6693146, at *2. *4 (C.D. Cal. May 23, 2016) (four co-lead counsel and a five-firm steering committee); *In re Domestic Airline Travel Antitrust Litig.,* No. 15-mc-1404 (MDL No. 2656), 2016 WL 11953343, at *2 (D.D.C. Feb. 4, 2016) (two co-lead class counsel and a three-member executive committee); *Brigiotta's Farmland Produce & Garden Ctr., Inc. v. United Potato Growers of Idaho, Inc*., No. 10-cv-307 (MDL No. 2186), 2010 WL 3928544, at *3-4 (D. Idaho Oct. 4, 2010) (10-firm DPP executive committee with a single chair).

Comparable or even larger structures were approved in similarly complex class actions in other practice areas. *See, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d 170, 176 (S.D.N.Y. 2020) (noting prior appointment of three co-lead counsel and a ten-attorney plaintiff executive committee); *In re Initial Pub. Offering Sec. Litig.*, No 21-mc-92, 2011 WL 2732563, at *1 n.1 (S.D.N.Y. July 8, 2011) (noting appointment of six-firm committee to serve as lead counsel and a four-firm steering committee); *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98-cv-4318, 2001 WL 709262, at *2 (S.D.N.Y. June 22, 2001) (noting prior appointment of three co-lead counsel and a three-member executive committee).

6

necessary to prosecute this litigation, while vesting coordination, management, and ultimate decision-making authority in a single firm, ensuring efficiencies for both the parties and the Court and preventing duplication. The Hausfeld Group seeks appointment of Hausfeld as Interim Lead Class Counsel and the appointment of Berger Montague, Gustafson Gluek, and Roberts Law Firm as members of an Executive Committee.

**Hausfeld.** As Interim Lead Class Counsel, Hausfeld would be vested with sole decision-making authority and sole responsibility for coordinating and managing this litigation; assigning to, and supervising, all work done by, the Executive Committee and other plaintiffs' counsel as appropriate;[7] serving as the primary liaison with the Court; speaking as the sole voice for DPPs; and resolving the claims at issue and directing trial activities. The proposed Executive Committee and other plaintiffs' counsel will perform work only at Hausfeld's direction.

Empowering a single firm as Interim Lead Class Counsel eliminates the duplication and delay that may result when multiple firms are jointly responsible for all case decisions, by,

---

[7] This leadership proposal anticipates contributions to the case by other firms representing DPPs that are not appointed by the Court and seeks authority to delegate to them specific, non-duplicative tasks at appropriate stages of the case. These may include tasks related to further investigations and discovery of plaintiffs that counsel represent, resource-intensive projects, such as voluminous document review, and matters in which the unappointed firms have particular expertise and delegation will enhance efficiencies.

Such delegation is appropriate and routine in MDLs involving complex legal and factual issues and voluminous document productions such as this one. *See, e.g.*, *Manual for Complex Litigation* (Fourth) §40.22, ¶1(d) (model appointment order authorizing delegation to unappointed firms); *In re Domestic Airline Travel Antitrust Litig.*, No. 15-mc-1404 (MDL No. 2656), 2015 WL 14081430, at *1 (D.D.C. Dec. 7, 2015) (directing that interim class counsel shall have authority to "manage the work among all counsel"); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, No. 07-mc-489 ( MDL No. 1869), 2008 WL 1883447, at *3 n.2 (D.D.C. Apr. 28, 2008) (reminding interim class counsel "of their obligation to assign significant roles to firms other than those on the Executive Committee and their responsibility to most effectively use the talents of the firms available to them"); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-md-1720, 2006 WL 2038650, at *5 (E.D.N.Y. Feb. 24, 2006) (appointing three co-lead and one liaison counsel and authorizing delegation to unappointed firms).

among other things, avoiding internal and sometimes lengthy negotiations among appointed class counsel on case decisions. It also prevents difficulties that arise when no single firm is authorized to speak on the behalf of the DPPs to the Court or opposing counsel without the consent of other interim class counsel as well as duplication that results from multiple interim co-lead counsels' review on the same work product.[8] Further, the structure ensures centralized case management for more efficient case operations, permitting a single firm to direct tasks thereby avoiding duplication that can result when multiple firms possess equal decision-making authority. And it permits Hausfeld to limit counsels' attendance at hearings, conferences, meetings, and depositions to only those essential to the task, eliminating duplicative time and costs.

Hausfeld has a long history of disciplining (and identifying and removing where appropriate) unnecessary or redundant time and expenditures in cases in which it has been appointed lead or co-lead counsel. Decl. of Jeannine Kenney ("Kenney Decl.") ¶ 27. To further prevent duplication and ensure efficiency in this action, if appointed as Interim Lead Class Counsel for DPPs, Hausfeld will propose to the Court a time and expenses protocol that will govern work conducted in this case. The protocol will, among other provisions: (a) prohibit work

---

[8] Appointment of a single Interim Lead Class Counsel with sole authority to make case decisions and assign non-duplicative litigation tasks addresses concerns some courts have raised about potential redundancies of executive committees.

In any event, those concerns have arisen under circumstances that are not present here, such as in cases where large committees were proposed in addition to multiple interim class counsel, the litigation was less complex, involved fewer defendants, or the proposed members of the committee did not consent to the structure. *See, e.g.*, *In re Deva Concepts Prods. Liab. Litig.*, No. 20-cv-1234, 2020 WL 4368362, at *3 (S.D.N.Y. July 30, 2020) (expressing concern about an executive committee in the non-MDL, single-defendant case, where counsel sought appointment of four interim class counsel and a nine-person executive committee involving nearly half of the attorneys in the case); *In re Parking Heaters Antitrust Litig.*, 310 F.R.D 54, 57-58 (E.D.N.Y. 2015) (declining to appoint a four-firm executive committee in a three-defendant case because, *inter alia*, only one of the proposed members of the committee supported the proposal and the proposed members disagreed on who would lead the committee, rendering that structure impractical).

on the matter unless expressly authorized by Hausfeld; (b) prohibit read and review time unless expressly requested by Hausfeld or if necessary to a task assigned by Hausfeld; (c) limit attendance at case-related events to only necessary counsel; (d) cap certain attorney billing rates; (e) prohibit billing by senior attorneys for work that can be conducted by junior attorneys, billing by attorneys for paralegal-appropriate tasks, and any billing for purely administrative tasks; (f) require contemporaneous time records and submission of monthly time and expense reports to Hausfeld; and (g) impose restrictions on travel and related costs. *Id.* ¶ 28.

      **The Executive Committee.** Executive Committees are appropriate in multi-district litigation such as this where there are "numerous complex issues [or] there is a substantial amount of work to be done." Bolch Judicial Inst., *Guidelines and Best Practices for Large and Mass-Tort MDLs* (2018) (2d ed.) ("*Bolch Guidelines*") at 33, Duke L. School, https://scholarship.law.duke.edu/bolch/5/. Executive Committees "can perform many functions, from consulting with lead counsel on overall case strategy to developing and implementing a litigation plan, managing discovery, preparing briefs, and presenting argument to the court" and will typically include three to five counsel. *Id.*

      Each of the three firms on the proposed Executive Committee will carry out specific, discrete, and defined functions, as assigned and supervised by Hausfeld. By assigning specific roles to a lean leadership team, Hausfeld will achieve efficiencies, avoid duplicative staffing, and keep litigation costs in check.

      Moreover, the proposed structure allows Hausfeld to concentrate work and expertise in a particular Executive Committee firm for the duration of the litigation, drawing on each firm's core strengths. For example, each Executive Committee member will be assigned to design and execute a discovery plan for one of the four defendant groups, concentrating expertise regarding

that defendant for the duration of the litigation, achieving efficiencies. As another example, an Executive Committee firm may be assigned responsibility to oversee core electronic discovery tasks, such as locating, collecting, and producing documents and ESI sought by Defendants from DPPs, engaging in negotiations over electronic discovery with Defendants, and managing electronic document review, thereby concentrating technical matters within a single firm. Similarly, matters requiring economic expertise, such as aspects of class certification and expert discovery, may be assigned to the Executive Committee firm with the deepest experience in those matters. More broadly, the Executive Committee will also provide additional experience and expertise on which Hausfeld can draw for strategic input and support throughout the litigation as issues arise. *See Bolch Guidelines* at 33.

**B.      Hausfeld Is Capable and Qualified to Serve As Interim Lead Class Counsel.**

*1.   Hausfeld has done significant work investigating the claims in this Action, coordinating plaintiffs' efforts, and advancing this litigation***.**

On October 17, 2023, following announcements by foreign enforcement authorities that they were working with the Antitrust Division of the DOJ to investigate anticompetitive conduct in the global market for CCAs, Hausfeld immediately began investigating potential civil claims on behalf of direct purchasers of CCAs. *See* Kenney Decl. ¶ 2. Since then, the firm has invested significant resources to identify and develop the factual and legal bases for Plaintiffs' claims. *Id*. ¶ 3. Among other things, Hausfeld studied the CCA industry; analyzed market data and reports; reviewed Defendants' public disclosures, investor presentations, and announcements about their pricing strategies; retained consultants; and investigated the industry and alleged claims with potentially impacted parties. *Id*. On November 29, 2023, Hausfeld filed the first class action complaint now before this Court on behalf of M&D Peterson, LLC, followed by the second class complaint on behalf of Keystone Concrete Block & Supply Co. Inc. *Id*. ¶ 4. As a result of

Hausfeld's extensive investigation, the two complaints included detailed factual allegations that go well beyond the facts announced by the regulators. *Id*. The six other DPP complaints (and many IPP complaints) filed in subsequent months substantially mirror the allegations developed by Hausfeld. *Id*. ¶ 5.

Hausfeld is also the only firm representing a direct purchaser that has effectuated Hague service on the foreign defendants, owing in part to its international presence. *Id*. ¶ 6. To ensure the orderly progression of this litigation and minimize unnecessary expenditure of resources, Hausfeld's lawyers led negotiations with Defendants to effectuate a stipulation for all related actions filed in the Eastern District of Pennsylvania ("EDPA") to develop a schedule for (and postpone) Defendants' responses to those complaints until after resolution of the motion to transfer pending before the JPML and the filing of Consolidated Complaints (among other provisions). *Id*. ¶ 7. And it coordinated with counsel who filed related actions in this District Court to ensure entry of a comparable stipulation. *Id*. Hausfeld also appeared before the JPML on behalf of all the EDPA DPPs, led negotiations with Defendants on behalf of DPPs to prepare the joint initial report submitted to this Court following consolidation and the proposed scheduling order recently entered, and represented DPPs at this Court's May 30, 2024 initial case management conference. *Id*. ¶ 8-9. These ongoing efforts weigh strongly in favor of appointing Hausfeld as Interim Lead Class Counsel for the Direct Purchaser Class.

> 2. *Hausfeld, one of the world's leading plaintiffs' antitrust firms, has the experience and expertise to lead this litigation effectively and efficiently.*

Hausfeld is recognized as one of the world's preeminent plaintiffs' antitrust litigation firms. *Id*. ¶ 13-15, 17 & Ex. A (Hausfeld Firm Resume) at 7-12. With offices in the United States, the United Kingdom, and Germany (and other European countries), Hausfeld's attorneys are experts in prosecuting global antitrust cases that include foreign defendants. *Id*. ¶¶ 10, 16.

Cross-border collaboration will continue in this case to the extent necessary to zealously represent the interests of the putative DPP Class. *Id.* ¶ 10.

Since its formation in 2008, Hausfeld has served in a leadership role in more than 80 antitrust and other complex class actions. *Id.* ¶ 13-15; *see also* Ex. A at 1. The firm has litigated and tried some of the most challenging antitrust class actions, achieved precedential rulings, and negotiated some of the largest and most complex settlement agreements, recovering billions of dollars for class members. *Id.* ¶ 14 & Ex. A at 3-6. These include, among others, the following cases in which Hausfeld served as co-lead class counsel: *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13-cv-7789 (S.D.N.Y.) ($2.3 billion in settlements); *In re Blue Cross Blue Shield Antitrust Litig.*, No. 13-md-2496 (N.D. Ala.) ($2.67 billion in settlements); *In re LIBOR-Based Financial Instruments Antitrust Litig.*, No. 11-md-2262 (S.D.N.Y.) ($781 million in settlements to date; litigation ongoing); *In re Municipal Derivatives Antitrust Litig.*, No. 08-cv-2516 (MDL No. 1950) (S.D.N.Y.) ($200 million in settlements); and *In re Air Cargo Shipping Services Antitrust Litig.*, No. 06-md-1775 (E.D.N.Y) ($1.2 billion in settlements). *See, e.g., id.* ¶ 14 & Ex. A at 3-6. The firm also has expertise in cross-border discovery owing to its experience with complex antitrust actions against foreign defendants. *See, e.g., id.* ¶ 16 & Ex. A at 2 (discussing *LIBOR*, No. 11-md-2262 (S.D.N.Y.) and *Foreign Exchange*, No. 13-cv-7789 (S.D.N.Y.)).

The firm's antitrust expertise is widely recognized. Among other recognition, *Chambers USA* has consistently ranked Hausfeld as Band 1 in its "Antitrust: Plaintiff (Nationwide)" category, noting the firm "is amongst the absolutely top tier of firms in this sector" and "brings so much to bear in litigation. On top of being very skilled litigators, they also bring an international bench." *Id.* ¶ 17. *The Legal 500* has praised Hausfeld as "a leading firm for antitrust

damages in Europe and the U.S." with a "number of heavyweight practitioners," and *Global Competition Review* has raved that "the lawyers at Hausfeld have established themselves as one of—if not the—top plaintiffs' antitrust firm in the U.S." *Id*.

Hausfeld's team will be led by partners Jeannine Kenney, Nathaniel Giddings and Scott Martin.

**Jeannine Kenney** has extensive experience in prosecuting all aspects of Section 1 litigation from initial pleading to settlement and trial. She plays a leading role in *In re Domestic Airline Travel Antitrust Litig.* No. 15-mc-1404 (MDL No. 2656) (D.D.C.) ($60 million in settlements to date) in which Hausfeld is Interim Co-Lead Class Counsel and manages an executive committee. She is also a member of the court-appointed Plaintiffs' Steering Committee in *In re Generic Pharmaceuticals Pricing Antitrust Litig.,* MDL No. 2724 (E.D. Pa.), alleging a price fixing scheme involving more than 100 generic drugs and dozens of defendants. And she was a key member of the case and trial team in *In re Processed Egg Products Antitrust Litig.*, MDL No. 2002 (E.D. Pa.) ($135 million in settlements). She is experienced in managing complex litigation in other practice areas, having been appointed Liaison Counsel in *In re National Football League Concussion Injury Litig.,* No. 12-md-2323 (E.D. Pa.) and as Co-Lead Interim Class Counsel in *In re Wawa Inc. Data Security Litig.*, No. 19-cv-6019 (E.D. Pa.).

Ms. Kenney is also nationally known for her expertise in electronic discovery, ranked by *Chambers* in Band 1 (Plaintiffs): E-Discovery & Information Governance, a recognition bestowed on only four plaintiffs' attorneys in the United States. Across *both* the plaintiff and defense bars, she is among only 61 U.S. lawyers ranked by *Chambers* for E-Discovery. Ms. Kenney is active in the Sedona Conference Working Group 1 and speaks regularly at trade conferences, counseling attorneys on complex discovery matters. For several years, she has been

recognized as a "Super Lawyer" in antitrust by *Pennsylvania Super Lawyers.* Ms. Kenney's biography is appended to the Hausfeld firm resume, attached as Exhibit A to the Kenney Declaration.

**Nathaniel Giddings** similarly has extensive experience in litigating and managing all aspects of Section 1 class actions. For example, Mr. Giddings is one of the primary attorneys on *In re LIBOR-Based Financial Instruments Antitrust Litig.*, MDL No. 2262 (S.D.N.Y.), alleging some of the World's largest banks conspired with one another to suppress LIBOR during the global financial crisis; *In re Local TV Advertising Antitrust Litig.*, MDL No. 2867 (N.D. Ill.), alleging, *inter alia,* that broadcast television stations fixed the prices for broadcast television advertising; and *In re Disposable Contact Lens Antitrust Litig.*, MDL No. 2626 (M.D. Fla.), alleging dominant manufacturers of disposable contact lenses in the United States conspired to adopt, implement, and enforce resale price maintenance policies. Mr. Giddings is also a thought leader in eDiscovery, appearing frequently on panels discussing eDiscovery topics and actively participating in The Sedona Conference Working Group 1, through which he has contributed to publications concerning privilege logs, Rule 502(d) orders, and Rule 45 subpoenas. Mr. Giddings has been recognized by the American Antitrust Institute (Outstanding Antitrust Litigation Achievement by a Young Lawyer), Benchmark Litigation (40 & Under List), and Super Lawyers (Rising Star). Mr. Gidding's biography is appended to the Hausfeld firm resume, attached as Exhibit A to the Kenney Declaration.

**Scott Martin**, Co-Chair of Hausfeld's Antitrust Practice and head of Hausfeld's New York office, will bring the added perspective of extensive experience practicing in this District and litigating and trying antitrust cases on both the plaintiff and defense sides. He is recognized by *Chambers* in Band 1, Antitrust (Plaintiffs) and by *The Legal 500* as a recommended lawyer in

antitrust and he has served in numerous leadership positions within the ABA, including as a member of the Editorial Board for the ABA's Antitrust Law Developments treatise and as the International Officer for the ABA's Antitrust Law Section. He has been a key member of the case teams for *In re National Football League's "Sunday Ticket" Antitrust Litig.,* No. 15-ml-2668 (C.D. Cal.), in which trial is ongoing, as well as the *LIBOR* and *Blue Cross Blue Shield* matters discussed *supra*. Mr. Martin's biography is appended to the Hausfeld firm resume, attached as Exhibit A to the Kenney Declaration.

### C. Berger Montague, Gustafson Gluek, and Roberts Law Firm Are Capable and Qualified to Serve as the Executive Committee.

Berger Montague, Gustafson Gluek, and Roberts Law Firm have worked cooperatively with Hausfeld since inception of these related actions on all issues that have arisen to date, have undertaken substantive work in the development of the case, and have a proven track record of success in antitrust class actions. Kenney Decl. ¶¶ 20-21, 23, 25. Hausfeld has served in leadership roles with each of these firms in large, high-stakes antitrust class actions; they have a history of, and reputation for, working together effectively, cooperatively, and respectfully. *Id*.

#### 1. *Berger Montague PC*

Described by *Chambers & Partners* as a "[b]outique firm with deep expertise in complex antitrust litigation," Berger Montague, which has one of the largest antitrust departments of any plaintiffs' class action firm, pioneered the antitrust class action and has been engaged in the practice of complex and class action litigation for more than fifty years.

Berger Montague's recent successes as lead or co-lead counsel in antitrust class actions include: *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No. 05-md-1720 (E.D.N.Y.) (settlement of approximately $5.6 billion); *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15-cv-7488 (S.D.N.Y.) ($750 million class settlement); *King*

*Drug Co. v. Cephalon, Inc.*, No. 06-cv-01797 (E.D. Pa.) ($512 million class settlement); *In re Domestic Drywall Antitrust Litig.*, No. 13-2437 (E.D. Pa.) (settlements totaling $190.7 million); and *In re Commodity Exchange, Inc. Gold Futures & Options Trading Litig.*, No. 14-md-02548 (S.D.N.Y.) (settlements totaling $152 million).

Berger Montague is currently lead or co-lead counsel in more than two dozen of the largest and most complex antitrust class actions in courts around the country, including *In re Google Digital Advertising Antitrust Litig.*, No. 21-md-3010 (S.D.N.Y.) (relating to Google's digital advertising products); *In re Broiler Chicken Grower Antitrust Litig.*( "*Chicken Growers*"), No. 20-md-2977 (E.D. Okla.) (obtaining certification of a class of farmers and alleging a conspiracy to suppress compensation to farmers); *Henry v. Brown Univ.*, No. 22-cv-0125 (N.D. Ill.) (alleging collusion on financial aid awards); and *In re Rotavirus Vaccines Antitrust Litig.*, No. 18-cv-1734 (E.D. Pa.) (representing a class of healthcare providers who purchased pediatric rotavirus vaccines). Further details regarding Berger Montague's background and qualifications are set forth in its firm resume, attached as Exhibit B to the Kenney Declaration.

Shareholders Candice Enders and Patrick Madden will be principally responsible for Berger Montague's work in this litigation.

**Candice Enders** has significant experience investigating and developing antitrust cases, navigating complex legal and factual issues, negotiating discovery, designing large-scale document reviews, synthesizing and distilling conspiracy evidence, and working with economic experts. Ms. Enders has played pivotal roles in numerous antitrust class actions, including *In re Commodity Exchange, Inc. Gold Futures & Options Trading Litig.*, No. 14-mc-2548 (S.D.N.Y.) ($152 million in settlements preliminarily approved) and *In re Domestic Drywall Antitrust Litig.*, No. 13-md-2437 (E.D. Pa.) (obtaining $190 million in total settlements on behalf of direct

purchasers of drywall; class certification granted; and denial of defendants' motion for summary judgment). Ms. Enders has been repeatedly recognized as a "Rising Star" in antitrust litigation by *Pennsylvania Super Lawyers*. Ms. Enders' biography is appended to Berger Montague's firm resume, attached to the Kenney Declaration as Exhibit B.

**Patrick Madden** is a member of the firm's Antitrust and Consumer Protection departments. Mr. Madden was a member of the lead counsel team representing a class of mixed martial arts fighters in related antitrust lawsuits against the Ultimate Fighting Championship. *Le v. Zuffa, LLC*, No. 15-cv-1045 (D. Nev.); *Johnson v. Zuffa, LLC*, 21-cv-1189 (D. Nev.) ($335 million settlement pending court approval). Mr. Madden is also on the lead counsel team in *Chicken Growers*, representing a class of broiler chicken farmers against the dominant chicken processors for allegedly colluding to suppress compensation. He currently serves on the lead counsel team in the *Google Digital Publisher Antitrust Litig.*, No. 21-cv-7034 (S.D.N.Y.), a groundbreaking monopolization case concerning Google's practices in the digital display advertising industry. In 2021, *Law360* named Mr. Madden a "Rising Star" in Class Actions, and every year from 2013-2021, *Pennsylvania Super Lawyers* also named him a "Rising Star." Mr. Madden's biography is appended to Berger Montague's firm resume, attached to the Kenney Declaration as Exhibit B.

### 2.   *Gustafson Gluek PLLC*

Gustafson Gluek PLLC is a 21-attorney law firm with a national practice specializing in complex litigation, with an emphasis on antitrust litigation. Since its founding in 2003, Gustafson Gluek has opposed some of the nation's largest companies and law firms, obtaining multi-million-dollar victories and critical injunctive relief for millions of class members consisting of both consumers and businesses. *See, e.g.*, *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-8637 (N.D. Ill.) (co-lead counsel for indirect purchaser food preparer class, recovering over $105

million); *In re Pork Antitrust Litig.*, No. 18-cv-1776 (D. Minn.) (co-lead counsel for consumer class, recovering over $95 million to date); *In re Cattle and Beef Antitrust Litig.*, No. 22-cv-3031 (D. Minn.) (co-lead counsel for direct purchaser class, recovering over $50 million to date); *In re Syngenta Litig.*, No: 27-cv-15-3785 (Minn. Dist. Ct.) (MDL No. 2591) (co-lead counsel in state court class action representing Minnesota farmers and one of four counsel selected as settlement counsel, resulting in a $1.51 billion settlement); *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-cv-42 (E.D.N.Y.) (co-lead counsel in international antitrust class action, recovering over $400 million from 68 defendants). Further details regarding Gustafson Gluek's background and qualifications are set forth in its firm resume, attached as Exhibit C to the Kenney Declaration.

Partners Michelle Looby and Dan Hedlund will be principally responsible for Gustafson Gluek's work in this litigation.

**Michelle Looby** has been appointed by courts across the country to serve as co-lead counsel in numerous antitrust class actions, including many of those highlighted above. As just one example, as result of her efforts in *Precision Associates,* the class recovered over $400 million, and Ms. Looby received the American Antitrust Institute's award for Outstanding Antitrust Litigation Achievement by a Young Lawyer. Ms. Looby has also been recognized by *Law & Politics* magazine as a "Super Lawyer Rising Star" from 2014-2020 and a "Super Lawyer" from 2021-2023. In 2023, she was named an Attorney of the Year by Minnesota Lawyer because of her efforts in a ground-breaking case involving the intersection between antitrust and labor law, which resulted in a teenage soccer prodigy being allowed to join a team in the National Women's Soccer League. Ms. Looby's biography is appended to Gustafson Gluek's firm resume, attached to the Kenney Declaration as Exhibit C.

**Dan Hedlund** is Co-Chair of Gustafson Gluek's antitrust department. He has practiced in the areas of antitrust, consumer protection, and securities fraud for more than twenty years. In addition to serving in leadership positions in more than a dozen cases, he is also a leader in the bar, having served as President of the Minnesota Chapter of the Federal Bar Association, Chairman for the Antitrust Section of the Minnesota State Bar Association (MSBA), Secretary for the MSBA Consumer Litigation Section, and President of the Committee to Support Antitrust Laws, among many other roles. Mr. Hedlund's biography is appended to Gustafson Gluek's firm resume, attached to the Kenney Declaration as Exhibit C.

### 3. Roberts Law Firm US, PC

Roberts Law Firm is a niche law firm with a team of experienced and reputable attorneys who deliver cost-effective client-focused representation, bringing to bear a specialization in the complex field of antitrust litigation. The firm's energetic, highly credentialed attorneys have prosecuted antitrust matters across a wide range of industries, including rubber chemicals, biosciences, pharmaceuticals and electronics. Roberts Law Firm currently serves as appointed lead or co-lead class counsel in several of the largest and most complex antitrust class actions in federal courts, including *In re HIV Drugs Antitrust Litig.*, No. 19-cv-2573  (N.D.  Cal) (co-lead class counsel for direct purchasers, $247 million settlement on the eve of trial); *In  re  Direct Purchaser  Insulin  Pricing  Litig.*, No. 20-cv-3426  (D.N.J.) (co-lead class counsel); *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, MDL No. 2724 (E.D. Pa.) (plaintiffs' steering committee member for the DPP class); *In re: Outpatient Medical Center Antitrust Litig.*, No. 21-cv-305 (N.D. Ill.) (co-lead class counsel for DPP Class); and *KPH Healthcare Services, Inc. v. Mylan, N.V.*, No. 20-cv-2065 (D. Kan.) (same).

Further, Roberts Law Firm promotes diversity, which weighs in favor of appointment. The firm is a Certified Minority Business Enterprise by the state of Texas and a longstanding

member of the NAMWOLF (the National Association of Minority and Women Owned Law Firms, Inc.). Additional details regarding Roberts Law Firm's background and qualifications are set forth in the firm resume, attached as Exhibit D to the Kenney Declaration.

Mike Roberts will steer Roberts Law Firm's work in this litigation and Karen Halbert will assist in electronic discovery efforts.

**Mike Roberts** is the founding owner and Managing Partner of the firm, with decades of expertise and a history of success in antitrust litigation. He has been appointed to leadership roles representing antitrust direct purchaser class clients in complex litigations, including but not limited to *In re HIV Drugs Antitrust Litigation, Staley et al. v. Gilead Sciences, Inc.*, No. 19-cv-02573  (N.D.  Cal.) (court-appointed co-lead class counsel for DPPs, with a $247 million settlement after the jury was empaneled); *First Impressions Salon, Inc., v. Nat. Milk Producers Fed'n*, No. 13-cv-454 (S.D. Ill.) (co-lead class counsel for DPPs, with $220 million in settlements on the eve of trial); *In re Glumetza Antitrust Litig.*, No. 19-cv-5822 (N.D. Cal.) (executive committee for DPPs, with $450 million in settlements); and *In re Parking Heaters Antitrust Litig.*, No. 15-mc-940 (E.D.N.Y.) (co-lead interim counsel for DPPs). Mr. Roberts is skilled at organizing and managing large cases and cooperating with counsel for all parties. He has been lauded by opposing counsel as "honorable," a "dedicated advocate[], and as "operat[ing] at the highest level of professionalism," and for expediting litigation.[9] Mr. Roberts' biography is appended to the Roberts Law Firm resume, attached to the Kenney Declaration as Exhibit D.

---

[9] Tr. at 16 (ECF No. 47), *Nat'l Trucking Fin. Reclamation Servs. v. Pilot Corp.*, No. 13-cv-250, (W.D. Ark. Nov. 25, 2013).

**Karen Halbert**, a Partner at Roberts Law Firm, also has extensive experience in complex commercial litigation, including antitrust class actions, and a skill set particularly suited to this complex. Ms. Halbert has a Bachelor of Science degree in Computer Science and 18 years of experience in the software and technology industry, including serving as the Vice President of Development for an international software company. As a result, her legal practice specializes in eDiscovery and technology. Additionally, Ms. Halbert has served on the court-appointed leadership committees for financial institutions in *Midwest America Federal Credit Union v. Arby's Restaurant Group., Inc*., No. 17-cv-514 (N.D. Ga.), and *Bellwether Community Credit Union v. Chipotle Mexican Grill*, No. 17-cv-1102 (D. Colo.), and *In Re Equifax, Inc., Customer Data Security Breach Litig.*, No. 17-md-2800 (N.D. Ga.). Like Mr. Roberts, Ms. Halbert has a track record of cooperation and efficiency in her practice. Her biography is appended to Roberts Law Firm resume, attached to the Kenney Declaration as Exhibit D

> **D.**   **The Hausfeld Group Will Commit the Resources Necessary to Lead the DPP Class.**

As leaders in the antitrust and class action bar with extensive experience litigating, trying, and resolving complex, resource-intensive cases of this magnitude, the Hausfeld Group is committed to expending the time, energy, and financial resources necessary to lead this litigation in the best interests of the Direct Purchaser Class.

Their ability to commit resources necessary for this litigation is demonstrated by their prior leadership appointments in similar matters. As discussed above, the Hausfeld Group regularly prosecutes major antitrust class actions, such as this one, that involve a commitment to lengthy, time-consuming litigation and require the firm to go toe-to-toe with well-funded groups of defendants located in jurisdictions around the world. These firms routinely advance the costs of such litigation and they have demonstrated the ability and willingness to dedicate substantial

21

resources to vigorously represent proposed class members. Kenney Decl. ¶ 18-19. Each firm is prepared to commit the personnel and financial resources necessary to effectively prosecute this case to a successful conclusion.

    **E.    The Hausfeld Group's Proposed Leadership Structure is the Product of Private Ordering and Reflects the Consensus of All DPPs and Their Counsel.**

    Counsel for Direct Purchaser Plaintiffs have engaged in private ordering, as encouraged by the *Manual for Complex Litigation*, and reached consensus for the appointment of the Hausfeld Group. *See Manual* § 21.272 (noting under private ordering, "[t]he lawyers agree who should be lead class counsel and the court approves the selection . . . to ensure that the counsel selected is adequate to represent the class interests"); *id.* § 10.22 (noting private ordering "should be encouraged"). The Hausfeld Group's proposal reflects the consensus of all direct purchaser plaintiffs and their counsel that have filed actions to date.[10] *See* Kenney Decl. ¶¶ 29-30.

    The support of all DPPs and their counsel of record underscores the capability of the Hausfeld Group in representing the putative DPP class. See *Air Cargo*, 240 F.R.D. at 58 (noting that where "large numbers of experienced counsel are satisfied to be represented by . . . applicants is some measure of the respect they command and the confidence of their peers that they will serve well in the role").

**IV.    CONCLUSION**

    For the reasons set forth above, the undersigned respectfully request that this Court appoint Hausfeld as Interim Lead Class Counsel and Berger Montague, Gustafson Gluek, and Roberts Law Firm as the Executive Committee for the Direct Purchaser Plaintiff class.

---

[10] The other direct purchaser plaintiffs supporting the appointment of the Hausfeld Group are D'Onofrio General Contractors Corp.; David A. Birdsell, appointed Trustee of the Chapter 7 bankruptcy estate of Agavero Readymix LLC; and Benevento Concrete Corp. Kenney Decl. ¶ 30.

DATED: June 24, 2024                    Respectfully submitted,


                                        */s/ Jeannine M. Kenney*
                                        Jeannine M. Kenney
                                        **HAUSFELD LLP**
                                        325 Chestnut Street, Suite 900
                                        Philadelphia, PA 19106
                                        Tel: (215) 985-3270
                                        Fax: (215) 985-3271
                                        jkenney@hausfeld.com
                                        kberan@hausfeld.com

                                        Nathaniel C. Giddings
                                        **HAUSFELD LLP**
                                        888 16th Street, NW, Suite 300
                                        Tel: (202) 540-7200
                                        Fax: (202) 540-7201
                                        ngiddings@hausfeld.com

                                        Scott Martin
                                        **HAUSFELD LLP**
                                        33 Whitehall Street, 14th Floor
                                        New York, NY 10004
                                        Tel: (646) 357-1100
                                        Fax: (212) 202-4322
                                        smartin@hausfeld.com

                                        Michael P. Lehmann
                                        Emma Blake
                                        **HAUSFELD LLP**
                                        600 Montgomery Street, Suite 3200
                                        San Francisco, CA 94111
                                        Tel: (415) 633-1908
                                        Fax: (415) 633-4980
                                        mlehmann@hausfeld.com
                                        eblake@hausfeld.com

                                        *Counsel for Plaintiffs M&D Peterson, LLC,*
                                        *Keystone Concrete Block & Supply Co.*
                                        *Inc., and the Proposed Direct Purchaser*
                                        *Class*

                                        Arthur N. Bailey
                                        **RUPP PFALZGRAF LLC**
                                        111 W. 2nd Street, Suite 1100

23

Jamestown, NY 14701
Tel: (716) 664-2967
bailey@ruppfalzgraf.com

*Counsel for Plaintiff M&D Peterson, LLC,
and the Proposed Direct Purchaser Class*

Joshua H. Grabar
**GRABAR LAW OFFICE**
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (267) 507-6085
Fax: (267) 507-6048
jgrabar@grabarlaw.com

Joseph E. Mariotti
**CAPUTO & MARIOTTI, P.C.**
730 Main Street
Moosic, PA 18507
Tel: 570-342-9999
Fax: 570-457-1533
jmariotti@caputomariotti.com

*Counsel for Plaintiffs Keystone Concrete
Block & Supply Co. Inc., 570 Concrete,
LLC, and the Proposed Direct Purchaser
Class*

Mindee J. Reuben
Steven J. Greenfogel
**LITE DEPALMA GREENBERG &
AFANADOR, LLC**
1515 Market Street, Suite 1200
Philadelphia, PA 19102
Tel: (215) 854-4060
Fax: (973) 623-0858
MJR Direct Dial: (215) 704-2524
mreuben@litedepalma.com
sgreenfogel@litedepalma.com

Joseph J. DePalma
**LITE DEPALMA GREENBERG &
AFANADOR, LLC**
570 Broad Street, Suite 1201
Newark, NJ 07102

24

Tel: (973) 623-3000
Fax: (973) 623-0858
jdepalma@litedepalma.com

Marc H. Edelson
**EDELSON LECHTZIN LLP**
411 S. State Street
Suite N300
Newtown, PA 18940
Tel: (215) 867-2399
medelson@edelson-law.com

Eric L. Cramer
Patrick F. Madden
Michaela L. Wallin
**BERGER MONTAGUE PC**
1818 Market Street
Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
ecramer@bm.net
pmadden@bm.net
mwallin@bm.net

*Counsel for Plaintiff 570 Concrete, LLC,*
*and the Proposed Direct Purchaser Class*

Joseph C. Kohn
William E. Hoese
**KOHN, SWIFT & GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Tel: (215) 238-1700
Fax (215) 238-1968
jkohn@kohnswift.com
whoese@kohnswift.com

Michael L. Roberts
Erich P. Schork
Sarah E. DeLoach
**ROBERTS LAW FIRM US, PC**
1920 McKinney Ave, Suite 700
Dallas, Texas 75201
Tel: (501) 821-5575
Fax: (501) 821-4474
mikeroberts@robertslawfirm.us

25

erichschork@robertslawfirm.us
sarahdeloach@robertslawfirm.us

*Counsel for Plaintiff J&L Imperium Industries, LLC, and the Proposed Direct Purchaser Class*

Dianne M. Nast
Daniel N. Gallucci
Michele S. Burkholder
**NASTLAW LLC**
1101 Market Street, Suite 2801
Philadelphia, PA 19107
Tel: (215) 923-9300
Fax: (215) 923-9302
dnast@nastlaw.com
dgallucci@nastlaw.com
mburkholder@nastlaw.com

Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Matt Jacobs
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 So. Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
mjacobs@gustafsongluek.com

Christopher V. Le
Joshua Q. Callister
**BOIESBATTIN LLP**
4041 University Drive, 5th Floor
Fairfax, VA 22030
Tel: (703) 764-8700
Fax: (703) 764-8704
cle@boiesbattin.com
jcallister@boiesbattin.com

Simon B. Paris
Patrick Howard

**SALTZ, MONGELUZZI, &**
**BENDESKY, P.C**.
One Liberty Place, 52nd Floor
1650 Market Street
Philadelphia, PA 19103
Tel: (215) 575-3985
sparis@smbb.com
phoward@smbb.com

Michael J. Boni
Joshua D. Snyder
**BONI, ZACK & SNYDER LLC**
15 St. Asaphs Road
Bala Cynwyd, PA 19004
Tel: 610-822-0200
mboni@bonizack.com
jsnyder@bonizack.com

David M. Cialkowski
Ian F. McFarland
Zachary J. Freese
**ZIMMERMAN REED LLP**
1100 IDS Center
80 S. 8th St.
Minneapolis, MN 55402
Tel: (612) 341-0400
Fax: (612) 341-0844
david.cialkowski@zimmreed.com
ian.mcfarland@zimmreed.com
zachary.freese@zimmreed.com

*Counsel for Plaintiff H&S Ready Mix, Inc.*
*and the Proposed Direct Purchaser Class*